602 A.2d 309

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Thornton SAVAGE, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 24, 1991.

Decided Jan. 17, 1992.

Reargument Denied May 13, 1992.

110

Janis Smarro, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Helen Kane, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

McDERMOTT, Justice.

An argument in a bar went out to the corner of 37th and Fairmount Avenue in Philadelphia. Outside the appellant pulled a gun and shot one Lamont Pollar in the back during a chase around a parked car. Lamont Pollar died. The appellant was brought to trial, pled self defense, which the jury did not accept, and was convicted of first degree murder,[1] conspiracy,[2] and possession of an instrument of crime.[3] The jury's verdict, given the evidence that they heard and accepted, is beyond quarrel: by the appellant's own statement he fired the fatal shot; and the reasons he gave were contradicted by an eyewitness who saw him, in the chase around the car, fire the gun, and saw the 16 year old victim "go down."

1. 18 Pa.C.S. § 2502(a).
2. 18 Pa.C.S. § 903.
3. 18 Pa.C.S. § 907(a).

■   Appellant's post-trial motions were denied and judgments of sentence were imposed.[4]   Thereafter, appellant was denied appellate relief by Superior Court and he sought our review.   We now affirm the order of the Superior Court.

The fatal incident began with a dispute involving appellant, the sixteen year old victim, and two other undisclosed youths.   The dispute took place at the Bus Stop Bar on November 9, 1985.   Eventually it escalated to a point where a series of shots were fired and an eyewitness observed the appellant holding a gun at the time of the shooting.   The victim was subsequently found dead one block from the incident; he had a bullet wound in the back.   Later that evening the appellant returned to the scene and asked the police what had transpired.   They asked his name and he gave a name not his own.   Still later, appellant again returned to the scene, this time in different clothing and was seen trying to open the trunk of a car which was ultimately identified as belonging to him.   A police officer who staked out the scene interrupted appellant's activity and placed him under arrest.   After a search warrant was obtained, the police found a gun in the appellant's trunk, later determined to be the fatal weapon.

4.   Appellant was sentenced to life imprisonment on the first degree murder conviction and a concurrent period of one to two years imprisonment on the weapons conviction.   The trial court did not impose sentence on the conspiracy conviction due apparently to a misreading of 18 Pa.C.S. § 906.   That section provides:

A person may not be convicted of more than one of the inchoate crimes of criminal contempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime.

Here, the trial judge interpreted this section to mean that appellant's conviction of conspiracy merged into his murder conviction; therefore, he did not impose sentence on the underlying conspiracy conviction.   Since this aspect of the sentence was not appealed by the Commonwealth, our purpose in addressing this issue is for the purpose of clarification.   This was an incorrect reading of the statute. Section 906 provides only that a defendant cannot be sentenced on multiple inchoate crimes related to the same completed crime; it does not mean that the underlying inchoate crime merges into the completed crime.

In this appeal, appellant raises two issues, to wit: whether trial counsel was ineffective for pursuing a defense that utilized his prior record as a voucher for the truth of his testimony; and whether the trial court should have granted a mistrial after a Commonwealth witness made a statement regarding alleged prior criminal activity.

In response, the Commonwealth contends that although trial counsel's strategy involved the disclosure of the appellant's previous criminal record, this strategy was reasonable and was designed to further appellant's interests. As to appellant's second issue, the Commonwealth responds that the trial court's cautionary instructions to the jury cured any possible prejudice which may have occurred by the witness' unprovoked outburst, and therefore the trial court was correct in denying appellant's request for a mistrial.

■ In addressing appellant's first issue, the test for determining whether trial counsel was ineffective is as follows:

> First we must determine whether the underlying claim is of arguable merit. *Commonwealth v. Evans*, 489 Pa. 85, 413 A.2d 1025 (1980). If the claim is devoid of merit, our inquiry ceases for counsel will not be deemed ineffective for failing to pursue a meritless issue. *Commonwealth v. Nelson*, 514 Pa. 262, 523 A.2d 728 (1987). If, however, the claim possesses merit, we must then determine whether the course of action chosen by counsel had some reasonable basis designed to effectuate his client's interests. *Commonwealth v. Hentosh*, 520 Pa. 325, 554 A.2d 20 (1989). Finally, appellant must demonstrate how the ineffectiveness prejudiced him. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

*Commonwealth v. Tressler*, 526 Pa. 139, 142, 584 A.2d 930, 931–932 (1990). Thus, the mere allegation that trial counsel pursued a wrong course of action will not make out a finding of ineffectiveness.

■ Appellant's defense at trial was self defense: he contended that the victim's death occurred as a result of the scuffle in front of the bar. In order to support his self defense claim, there being no other witnesses that he could call to his aid, his own testimony was obviously necessary, and his case rested upon the jury believing he was credible. In furtherance of this approach, defense counsel, during his opening statement, stated the following:

You will hear from Mr. Savage, the cashier at the Super Fresh at Wynnewood and Lancaster Avenue. We will again elicit from him, and we will elicit from a number of character witnesses, including a Bishop of the church, a reverend, and some of the ladies, that for the past ten years Mr. Savage has had no criminal convictions; his wife is raising three children, et cetera. We will not attempt to hide from you that in the seventies that he had two or three convictions and got probation for certain matters. It will all come out.

I humbly ask you to reserve your judgment. Keep an open mind until you have heard the entire case.

At trial, appellant testified that after the scuffle he was afraid that the three youths would return; he hid the gun in the trunk in order to prevent the youths from retrieving it; and he did not reveal his identity to the police in fear of damaging his family's reputation. Trial counsel then called character witnesses who testified as to the appellant's good reputation in the community. In response, the Commonwealth offered proof of appellant's previous convictions of attempted burglary, weapons charge and selling drugs, and cross examined appellant's witnesses about their knowledge of these prior activities. In each case the character witness indicated that these prior indiscretions did not alter their opinion of appellant.

It is apparent that trial counsel had to make a difficult decision. In his view appellant's prior offenses were significantly different than the pending charge and were irrelevant if the jury believed he was put to defense of his own life. Moreover, counsel could reasonably believe that appel-

lant would appear more credible if he was truthful about his past, for such testimony had two significant benefits: first, it presented to the jury a man who was willing to be honest about a less than honorable past; and second, it gave trial counsel an opportunity to explain appellant's unusual actions immediately following the event on the basis that appellant had a justifiable fear of police contact.

Given all these circumstances, such a strategy was not only reasonable, but contains an old wisdom that full disclosure hides no liars. Counsel must be free to put the best available face forward; the fact that the tack taken was not successful does not mean it was unreasonable.

■ Appellant's second issue arises from unsolicited statements made by a Commonwealth witness. The statements were made during the following exchange:

[COURT REPORTER'S NOTE]:

(At this point in the proceedings, there was very loud cross-speaking on the part of the following persons, Mr. Moldovsky; Mr. McMahon; the witness, Jean Poller, and the Court. The transcription which follows, therefore, reflects only those portions that this reporter was able to understand.)

BY MR. MOLDOVSKY [Counsel for the Defense]:

Q   Ma'am, didn't you call the police when he stole the church's—

A   He most certainly—

MR. McMAHON [Counsel for the Commonwealth]: Objection.

A   —did not.

(Court reporter asks for clarification of question.)

THE COURT: Sustained.

MR. McMAHON: I—

THE COURT: With your objecting—

MR. McMAHON: I withdraw it.

THE COURT: You don't even let the woman answer.

THE WITNESS: Why don't you talk about—

THE COURT: That is all.

THE WITNESS: —second one—

THE COURT: That is all.

THE WITNESS: —killed.

THE COURT: Madam, just a moment.

(Courtroom decorum restored)

We will not go into this any further.

The lady for my purposes has been called merely to identify the fact that her son was alive on a certain day and the next day he was dead. And everyone should understand it. Do you have anything further?

MR. MOLDOVSKY: Not on this.

THE COURT: Do you have anything further?

MR. McMAHON: No, Sir.

THE COURT: You are excused, Miss. Thank you.

.    .    .    .    .

MR. MOLDOVSKY: May it please the Court, may we see you at side bar for a moment?

(The following takes place at sidebar.)

MR. MOLDOVSKY: Judge, I would ask that the court reporter read back the very last statement by Mrs. Poller.

Mr. James would you please state, for the record, what you heard the lady say, please?

MR. JAMES: [Counsel for the Co–Defendant], The lady said very clearly, why don't you ask him, referring to Mr. Savage, this is the second kid he has killed anyway.

THE COURT: I heard that. Now, are you satisfied? What else do you want?

MR. MOLDOVSKY: I move for a mistrial.

THE COURT: It is denied. Your motion is denied. Let's get to it. Sir, you are puzzling me.

MR. MOLDOVSKY: In the alternative, I ask Your Honor to give a cautionary instruction to this jury, having denied the motion for a mistrial, asking them to ignore any answer said by the lady when the question—

THE COURT: And that's why I don't like the way that was done. I told you not to do it. I warned you not to do it. You wanted that? I will tell them. Let's get to it.

116

(The following takes place on the record.)

THE COURT: I don't know whether, Ladies and Gentlemen of the Jury, you heard the last witness' final comments which was responsive to nothing. But, she did make a comment and pointed to someone and said why don't you ask him. You are absolutely, unequivocally, without any reservation, I don't know how to say it any other way, to disregard that comment. It has nothing to do with this trial. I don't know if you heard it and I don't care if you didn't. It is not before you. All right ...

When reviewing a trial court's refusal to grant a motion for a mistrial, this Court has stated that "[a] motion for a mistrial is addressed to the discretion of the court. It is primarily within the trial court's discretion to determine whether defendant was prejudiced by the misconduct." *Commonwealth v. Gardner*, 490 Pa. 421, 426, 416 A.2d 1007, 1009 (1980). On appeal, our standard of review is whether the trial court abused that discretion.

In this case, it is unclear whether the jury actually heard the offending statements. Notwithstanding this fact, the judge gave curative instructions telling the jurors that they were to disregard the witness' unresponsive statements.

We have previously stated that emotional outbursts against the defendant by a family member, and references to unrelated prior criminal activity can be cured by the trial court giving curative instructions to the jury. *See Commonwealth v. Duffey*, 519 Pa. 348, 548 A.2d 1178 (1988); *Commonwealth v. Richardson*, 496 Pa. 521, 437 A.2d 1162 (1981).

In our role as a reviewing court we cannot gain a better view of the alleged effect of these statements than the trial judge, who found no indication that the jury disregarded his emphatic instructions. On this record we find no basis upon which to disagree with his decision.

Accordingly, the order of the Superior Court is affirmed.

NIX, C.J., and ZAPPALA, J., concur in the result.