J-A09044-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DWANE HANDY | |
| Appellant | No. 1656 EDA 2013 |

Appeal from the Judgment of Sentence entered June 5, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: 51-CR-0013034-2011

BEFORE:  BOWES, DONOHUE, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JULY 14, 2015**

Appellant, Dwane Handy, appeals from the judgment of sentence the Court of Common Pleas of Philadelphia County entered June 5, 2013.  Upon review, we affirm.

The relevant facts and procedural history can be summarized as follows:

> [O]n April 2, 2011, at approximately 4:40 P.M., [Police Officer Candice McCoy] went to the Busti Housing Project at 46th and Market Streets in Philadelphia in response to a radio call.  A black Pontiac Bonneville was in the eastbound lane with the engine running.  The driver's side door was slightly open and the front passenger's side window was shattered.  Two (2) black males discovered in the vehicle had been shot multiple times. The male sitting in the front passenger's seat was unresponsive. The male sitting in the driver's seat was complaining of pain in his legs.  The medic unit arrived and transported the males to the hospital.  The male [who] had been sitting in the passenger's seat, later identified as Quince Morant [(Morant)] . . ., was pronounced dead on arrival.  The other male, later identified as Sharad DuBose [(DuBose)], received treatment for his injuries.

J-A09044-15

Trial Court Opinion, 5/29/14, at 2.

Following the shooting, the police interviewed several individuals, including DuBose, Consuelo Matthews, Jerome Boyd, John Ashmore, and Ivory Matthews, who provided written statements incriminating Appellant as involved in the shooting. In essence, these witnesses stated that Appellant, along with codefendant, robbed Morant and DuBose, and, in the course of the robbery, killed Morant and injured DuBose. At trial, however, with one exception (Consuelo Matthews),[1] all of the witnesses distanced themselves from the prior statements they gave to the police, denying making any statement to the police (DuBose), not recalling signing any statement (Boyd), not recalling what information was provided to the police (Ashmore), disputing the accuracy of the statement (Ivory Matthew), or claiming not to have signed all pages of the statement (Ivory Matthew).

> On May 31, 2013, [Appellant] was found guilty by a jury of [m]urder of the [second] [d]egree; [a]ggravated [a]ssault; two (2) counts of [r]obbery; [c]onspiracy to [c]omit [r]obbery and, [p]ossession of an [i]nstrument of [c]rime. He was sentenced that same day to [l]ife without possibility of parole for the [m]urder conviction; five (5) to ten (10) years for the [a]ggravated [a]assault conviction; five (5) to ten (10) years for each [r]obbery conviction; and, . . . five (5) to ten (10) years for the [c]onspiracy to commit [r]obbery conviction; all sentences to run concurrently.

_____

[1] At trial, Consuelo Matthews, "confirmed that most of the statement was accurate. However, she testified that she did not tell [detectives] that [Appellant] took Ebony into the bathroom with him." *Id.* at 4.

- 2 -

On June 5, 2013, the court amended its sentencing order and vacated the sentence imposed on the two (2) counts of [r]obbery since they were lesser included offenses of [second] [d]egree [m]urder.

Trial Court Opinion, 5/29/14, at 1 (footnote omitted).  This appeal followed.

On appeal, Appellant raises the following issues:

1. Did not the trial court err in denying [A]ppellant's motion to suppress inculpatory statements, where the statements were the product of an unlawful arrest unsupported by probable cause?

2. Did not the trial court err in refusing to permit to question co-defendant . . . regarding his prior arrest with Elante Outterbridge, where such questioning was relevant to [A]ppellant's defense at trial and where [codefendant] opened the door by testifying to his own character?

3. Did not the trial court err in denying repeated defense motions for a mistrial, where the Commonwealth engaged in an ongoing course of prejudicial conduct that included open references to the fact that documents had been redacted; improper comments in denigration of defense counsel; and improper burden-shifting, misstatement of evidence, and appeals to community sympathy and outrage?

4. Did not the trial court err in failing either to grant a mistrial or to conduct further investigation after it became apparent that specific information regarding the jury's deliberations had been leaked?

Appellant's Brief at 3.

In his first argument, Appellant claims the trial court erred in finding the officers had probable cause to arrest Appellant.  Specifically, Appellant argues the Commonwealth failed to make out a *prima facie* case Appellant committed the crimes ascribed to him.  Appellant's Brief at 33 (quoting

*Commonwealth v. Weigle*, 997 A.2d 306 (Pa. Super. 2010)).  Appellant

also added that

> Pennsylvania courts have thus held that the question of probable cause is closely related to the issue of legal sufficiency: would the evidence possessed by the police at the time they arrested appellant, assuming it were true, have been sufficient to allow a judge or magistrate to find probable cause to bind him over for trial?

*Id.* (relying, presumably, on *Weigle*).

Appellant misunderstands the law.  *Weigle* deals with the

Commonwealth's burden at a preliminary hearing, not with the

Commonwealth's burden at a suppression hearing.  At a preliminary hearing,

the Commonwealth must provide (i) evidence of each of the material

elements of the crime charged and (ii) and establish probable cause to

warrant belief that the accused committed the crime.[2]  At a suppression

---

[2] In *Commonwealth v. Lacey*, 496 A.2d 1256, 1260-61 (Pa. Super. 1985), this Court noted:

> A creature of statute, the preliminary hearing is intended to protect the accused from unlawful detention.  To that end, the prosecution must establish at least a *prima facie* case that a crime has been committed and that the accused is the one who committed it.  The Commonwealth's burden at this stage falls short of proof beyond a reasonable doubt.  The proof need only be such that, if the evidence were presented at trial and accepted as true, the trial judge would be warranted in allowing the case to go to the jury.

*Id.* at 1260 (citations omitted).  We also explained our standard of review as follows:

*(Footnote Continued Next Page)*

hearing where a defendant challenges the arrest, however, the Commonwealth must produce only evidence of the propriety of the arrest, *i.e.*, probable cause to arrest, not evidence sufficient to make a *prima facie* case of guilt. **Commonwealth v. Holloway**, 323 A.2d 216, 217 (Pa. Super. 1974). "It is only probability, and not a prima facie showing of criminal activity[,] that is the standard of probable cause for arrest[.] If the officer had known of a complaint when he took the appellant into custody, he would have had all the evidence presented at trial, i.e. prima facie evidence of guilt beyond a reasonable doubt." **Id.**; **see also Commonwealth v. Thompson**, 985 A.2d 931 (Pa. 2009) ("*probability,* and not a prima facie showing, of criminal activity" necessary for search and seizure) (emphasis in original) (citing **Illinois v. Gates**, 462 U.S. 213, 235 (1983)). Thus, reliance on **Weigle** is misplaced.

---
*(Footnote Continued)* _____

> Our function is to take the facts proven by the Commonwealth at the preliminary hearing and to determine whether the sum of those facts fits within the statutory definition of the types of conduct declared by the Pennsylvania legislature in the Crimes Code to be illegal conduct. If the proven facts fit the definition of the offenses with which the appellees are charged, then a prima facie case was made out as to such offense or offenses. If the facts do not fit the statutory definitions of the offenses charged against the appellees, then the appellees are entitled to be discharged.

**Id.** at 1260-61 (citation omitted).

Applying the proper standard, the trial court concluded the officer had probable cause to arrest Appellant. Specifically, at the suppression hearing, the investigating detective testified that he spoke, *inter alia*, to Ebony Matthews, Ivory Matthews, and the mother of eyewitness John Ashmore, all of whom knew Appellant and codefendant. Ebony told the detective that, "just" after the shooting, then 11-year-old John Ashmore told Ebony that he saw codefendant shooting someone inside a car. N.T. Suppression, 2/14/13, at 12. Ebony told the detective that Ashmore was shaking with fear because he had seen everything and "he was afraid that they were going to come get him." *Id.* at 13.

Ivory Matthews reported that Ashmore, upon entering the Matthews' apartment after the shooting, told Ivory that Appellant was in the backseat of the car when codefendant approached Morant and DuBose and said, "Y' all got to . . . the count of five to give it up." *Id.* at 23. Ashmore saw Appellant get out the car's back seat and walk away from codefendant before codefendant began firing the gun. *Id.*; *see also id.* at 36-37.

John Ashmore's mother reported to the detectives that she saw Appellant with codefendant on the elevator "right after" the shooting. N.T. Suppression, 2/15/13, at 51-52. She heard Ebony warning codefendant about the police in the courtyard. *Id.*

The trial court summarized this evidence as follows:

There [are] three really strong statements that indicate that [Appellant] more likely than not had involvement in this murder. . . .

So [codefendant] comes up to commit a murder, robbery/murder, [Appellant] gets to leave the car unscathed and [codefendant] and [Appellant] are together within a few minutes after the homicide. If that is not probable cause, I don't know what is.

*Id.*, at 63-64.

The trial court also properly noted: "There is a difference between probable cause to arrest and whether the detectives believed they had enough evidence to hold and whether they want to bring their case at that time or gather more information." *Id.* at 66.

In light of the foregoing, we conclude the trial court did not err in denying Appellant's motion to suppress the statements.[3]

In his second claim, Appellant argues the trial court erred in not allowing him to question codefendant about codefendant's prior arrests to show that Elante Outterbridge, who had been arrested with codefendant in the past in connection with another robbery, was involved in the crimes at issue here.

_____

[3] To the extent Appellant argues the Commonwealth failed to make a *prima facie* case at the preliminary hearing because the officer did not have probable cause to arrest, we find the claim meritless. It is well known that any defect in the preliminary hearing is cured by subsequent trial. "Once a defendant has gone to trial and has been found guilty of the crime or crimes charged, however, any defect in the preliminary hearing is rendered immaterial." **Commonwealth v. Melvin**, 103 A.3d 1, 35 (Pa. Super. 2014) (citation omitted).

In his argument, Appellant mentions Pa.R.E. 404(b) as controlling the issue, but fails to provide the pertinent analysis (*i.e.*, why the evidence sought was permissible as opposed to impermissible and whether its probative value outweighed its potential for prejudice).[4] Appellant merely argues that he should have been allowed to question codefendant because codefendant opened the door by testifying about his character for being a law-abiding citizen, *i.e.*, on two occasions, codefendant commented about the tone or content of the questions from the Commonwealth that, according to the codefendant, made him look like something he was not.

_____

[4] Rule 404(b) reads as follows:

> *(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> *(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.
>
> *(3) Notice in a Criminal Case.* In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(b).

Appellant's representation of the testimony above as "character evidence" is a stretch. However, even if codefendant "opened the door"[5] to questions about his character, Appellant fails to provide any explanation why he wanted to question codefendant on a prior arrest for robbery—assuming he could have impeached him with evidence of prior arrests—if he merely intended to show that he was not a law-abiding citizen.[6] We see no other reason for the proposed line of questions than Appellant's attempt to establish that codefendant acted in conformity with the prior robbery. Such evidence, however, is expressly prohibited under Pa.R.E. 404(b)(1). "A defendant has a fundamental right to present evidence, so long as the evidence is relevant and not subject to exclusion under our Rules of Evidence." **Commonwealth v. Patterson**, 91 A.3d 55, 71 (Pa. 2014). In the instant matter, Appellant essentially claims the trial court should have allowed him to show that Elante Outterbridge was involved in the instant robbery/murder, not Appellant, because codefendant and Elante

---

[5] "A litigant opens the door to inadmissible evidence by presenting proof that creates a false impression refuted by the otherwise prohibited evidence." **Commonwealth v. Nypaver**, 69 A.3d 708, 716 (Pa. Super. 2013) (citations omitted).

[6] Codefendant had seven arrests, mostly for felonies, including an arrest in connection with a robbery that took place in the neighborhood of the Busti Projects (West Philadelphia) on September 6, 2008. **See** N.T. Suppression, 2/14/13, at 27; N.T. Suppression, 2/15/13, at 60.

Outterbridge were arrested in connection with the 2008 robbery.[7] "Reverse Rule 404(b) evidence" refers to a defendant's use of other acts evidence under Pa.R.E. 404(b) to show that a third party had committed the crime at issue. *See United States v. Stevens*, 935 F.3d 1380, 1404 (3d Cir. 2001) (construing the materially similar Fed.R.Evid. 404(b)). No Pennsylvania court has squarely addressed the use of reverse Rule 404(b) evidence, but some have mentioned the concept obliquely. *See, e.g., Commonwealth v. Chmiel*, 889 A.2d 501, 534-35 (Pa. 2005) (holding that trial court properly precluded defendant from questioning witness concerning prior burglary which did not fall within permitted purposes of Rule 404(b) but merely tended to establish action in conformity with the prior act). To the extent a defendant's reverse Rule 404(b) evidence is admissible, it certainly does not permit a defendant to seek admission of "propensity evidence in violation of the prohibition of Rule 404(b)." *United States v. Williams*, 458 F.3d 312, 314 (3d Cir. 2006). The claim is therefore without merit.

Appellant next argues the trial court erred in denying Appellant's motions for mistrial due to the Commonwealth's misconduct.[8] Appellant,

---

[7] As noted, Appellant does not argue the questioning was intended to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of incident." Pa.R.E. 404(b).

[8] Appellant sought a mistrial following the Commonwealth's reference to documents and/or photographs being redacted and following a comment, directed to the jury, "that they would be serving until Memorial Day." *(Footnote Continued Next Page)*

however, does not challenge any specific ruling made by the trial court as improper or incorrect. In fact, Appellant conceded the rulings were proper. Appellant's Brief at 52. Appellant merely states the cumulative impact of the Commonwealth's actions amounted to prosecutorial misconduct even if the instances themselves, considered separately, did not rise to the level of prosecutorial misconduct. *Id.* In support, Appellant cites **Commonwealth v. Bricker**, 487 A.2d 346 (Pa. 1985), for the proposition a mistrial should be granted if the Commonwealth has engaged in a pattern of misconduct throughout the trial.

The claim fails for several reasons. Preliminarily, we note that **Bricker** is a plurality opinion, which means it is not binding authority. **Commonwealth v. Antoszyk**, 985 A.2d 975, 981 (Pa. Super. 2009). In any case, in **Commonwealth v. Miles**, 681 A.2d 1295 (Pa. 1996), the Supreme Court acknowledged that "if the prosecutor has engaged in a pattern of misconduct throughout the trial then there is reason to grant a new trial." *Id.* at 1303 (citing **Bricker**). However, the Supreme Court also noted that "[n]o number of *failed* claims may collectively attain merit if they could not do so individually." *Id.* (citation omitted) (emphasis in original).

*(Footnote Continued)* ─────────

Appellant also brought another motion for mistrial following Commonwealth's closing argument. Appellant argued that the Commonwealth improperly cited DuBose's statements for their content, whereas they were admitted for impeachment purposes only; improperly shifted the burden to the defense to produce evidence; improperly misstated the evidence; and improperly appealed to community sympathy or outrage.

- 11 -

Here, as in *Miles*, all claims for prosecutorial misconduct failed, and Appellant did not challenge their disposition. Thus, as in *Miles*, we conclude Appellant is not entitled to relief based on his claim.

Additionally, the claim fails on its merits.

The denial of a motion for a mistrial is assessed on appellate review according to an abuse of discretion standard. *See Commonwealth v. Savage*, 529 Pa. 108, 116, 602 A.2d 309, 312 (1992). The central tasks confronting the trial court upon the making of the motion were to determine whether misconduct or prejudicial error actually occurred, and if so, to assess the degree of any resulting prejudice. *See generally Commonwealth v. Boczkowski*, 577 Pa. 421, 454, 846 A.2d 75, 94 (2004) (characterizing a mistrial as an extreme remedy that needs only be granted where a prejudicial event may reasonably be said to have deprived the defendant of a fair trial).

*Commonwealth v. Sanchez*, 907 A.2d 477, 491 (Pa. 2006).

Here, the trial court found the challenged comments regarding the redacted photos and the pace of the trial were in fact intemperate and improper, but did not deprive Appellant of a fair trial. Similarly, the trial court found two comments (use of DuBose's statements and appeal to the community outrage) made during the closing argument required a curative instruction, but none of the claims warranted granting Appellant's motion for mistrial. On appeal, as noted, Appellant does not challenge any of these rulings, and does not argue—except for bald allegations—he suffered prejudice. As such, Appellant is entitled to no relief on this claim.

Appellant next argues the trial court erred in failing either to grant a mistrial or to conduct further investigation after it became apparent that

specific information about the jury's deliberations had been leaked. Specifically, Appellant argues that during the deliberations the trial court learned that a juror, Juror No. 7, had participated in conversations with outside parties regarding the jury's deliberations.

A close reading of Appellant's argument reveals that Appellant does not challenge the trial court's denial of his motion for mistrial. Indeed, Appellant concedes the trial court's determination in this regard was correct. Appellant's Brief at 54. Appellant, rather, argues, for the first time on appeal, that the trial court should have engaged in "further inquiries to trace the leak," Appellant's Brief at 58, and that questioning only one juror, the juror allegedly involved in the leak, was not enough to assess whether Appellant was prejudiced by the leak. *Id.* In support, Appellant cites *Commonwealth v. Price*, 344 A.2d 493 (Pa. 1975) for the proposition that "where the juror visited the scene of the crime, but that juror was not identified or questioned by the court, likelihood of prejudice could not be discounted and new trial was required[.]" Appellant's Brief at 56.

Appellant never requested or even alluded to the necessity of conducting further investigation until this appeal. As per defendants' request, the trial court questioned the only juror who could have been the source of the potential leak (Juror No. 7). Appellant did not complain at any time before now about the adequacy of the inquiry. The trial court was not made aware of the necessity of conducting further inquiry at any time.

Appellant raises the issue for the first time on appeal. The claim is therefore waived. *See* Pa.R.A.P. 302(a).

Additionally, had the claim been preserved, we would have found it meritless.

> Once the trial court is made aware that a juror has been exposed to extraneous information [. . .] that was not provided in open court or vocalized by the trial court via instructions which may have affected the juror's deliberation, the trial court must assess the prejudicial effect of the extraneous influence. In so doing, the trial court should consider: (1) whether the extraneous influence relates to a central issue in the case or merely involves a collateral issue; (2) whether the extraneous influence provided the jury with information they did not have before them at trial; and (3) whether the extraneous influence was emotional or inflammatory in nature.

*Commonwealth v. Pope*, 14 A.3d 139, 145 (Pa. Super. 2011) (citing *Commonwealth v. Messersmith*, 860 A.2d 1078, 1085 (Pa. Super. 2004)).

Here, the claim again would fail for several reasons. First, Appellant presumes prejudice from the trial court's failure to conduct further inquiries into the leak. However, this is not the test. The burden is on the moving party, here Appellant, to prove he suffered prejudice. *Id.* Second, once the moving party shows prejudice, the trial court must assess the extent of the prejudice of the extraneous influence. Appellant never made this showing because he never raised the issue before the trial court. To this end the trial court noted that Appellant "has failed to provide an argument as to how this extraneous information may have affected the juror's deliberation such that

it may have prejudiced [Appellant] or Co-Defendant. There was no argument made by [Appellant] as to what impact, if any, this extraneous information had on Juror No. 7." Trial Court Opinion, 5/29/14, at 22. Finally, **Price** is distinguishable. In **Price**, the trial court never conducted any inquiry into the alleged misconduct resulting in the trial court's failure to assess whether any prejudice occurred. Here, however, the trial court fully examined—to Appellant's satisfaction—Juror No. 7, and concluded that Appellant did not suffer prejudice from the extraneous influence. In this regard, the trial court noted:

> [T]he trial court conducted a meaningful colloquy with Juror No. 7[.] . . . Juror No. 7, a corrections officer at the House of Corrections, has a daughter who is a Corrections Officer at [Philadelphia Industrial Corrections Center]. Juror [No.7] denied speaking to anyone[,] including her daughter[,] about the deliberations in the case. [Juror No. 7] acknowledged that her daughter did tell her that [Appellant] knew her mother was sitting as a juror in his trial and asked her to put in a word with her mother. Juror No. 7's daughter told her that she ignored [Appellant] and acted like nothing happened.

Trial Court Opinion, 5/29/14, at 21.

Thus, the instant matter is distinguishable from **Price**. As a result, Appellant's reliance on **Price** is misplaced.

In light of the foregoing, we conclude Appellant is not entitled to relief on any of his claims.

Judgment of sentence affirmed.

- 15 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/14/2015</u>