J-S06034-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARRIE LYNN YOST | : | |
| | : | |
| Appellant | : | No. 954 WDA 2025 |

Appeal from the Judgment of Sentence Entered June 30, 2025
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0001292-2024

BEFORE: KUNSELMAN, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED: MARCH 13, 2026**

Appellant, Carrie Yost, appeals from the judgment of sentence entered in the Court of Common Pleas of Fayette County on June 30, 2025. After review, we affirm.

The trial court summarized the relevant facts as follows:

On Saturday, April 13, 2024, Harry Overdorff and his wife, Anne Reilly Overdorff were walking the first of their three dogs in the gated community of cabins at their weekend residence on Lakeview Road in Confluence. They observed a purple hair woman walking behind a black Jeep Cherokee with West Virginia license plates parked in the middle of Lakeview Road in front of the home of their acquaintances, the Zieglers. When they returned walking their second dog, they observed the Jeep parked in the driveway of the Ziegler[] residence. A second blond haired woman had items placed behind the Jeep and was loading it with a firepit, a long white piece of construction, a laundry basket with items in it, and several large buckets with [] items in them. The Overdorffs became concerned and rushed to call the Zieglers about what they

_____

[*] Former Justice specially assigned to the Superior Court.

observed. The Zieglers informed the wife that no one was to be at their cabin and should not be removing any items. A neighbor contacted the Pennsylvania State Police and the Overdorffs took pictures of the vehicle and got its license number. The Jeep left the residence.

When Troopers Noble and Reese arrived on the scene, they searched the cabin and found that it had been ransacked. The back door of the cabin was open. They were able to trace the vehicle to the Appellant and learned[ o]n arrival at the Appellant's residence, the Troopers observed the Jeep with the firepit by it, the white tarp canopy, and the buckets in or around the vehicle. The Zieglers were asked to come to the residence and were able to identify these items as well as curtain, knick-knacks and other decorations from the residence. The Appellant admitted to entering the cabin but claimed she thought it was abandoned. The co-defendant was also present at the Appellant's residence. The Zieglers recovered the items that they identified as theirs.

Tr. Ct. Op. at 1-2 (unpaginated).

Appellant and codefendant, Lisa Frank, were charged with Burglary-- overnight accommodation, 18 Pa.C.S.A. § 3502(a)(2); Theft by Unlawful Taking, with a value of $500.00, 18 Pa.C.S.A. § 3921(a); and Criminal Trespass, 18 Pa.C.S.A. § 3503(A)(1)(i).

A trial commenced on June 2, 2025. During the trial, counsel for Appellant requested a mistrial when it learned that there was a plea agreement between the Commonwealth and codefendant Frank. The Commonwealth had not previously disclosed to Appellant that codefendant Frank agreed to provide testimony against Appellant at trial. It is noteworthy, however, that at no time during the trial did the Commonwealth call codefendant Frank as a witness. Thus, despite her name having been disclosed

- 2 -

in discovery as a potential witness, she never provided testimony against Appellant.

Appellant was convicted at the conclusion of the jury trial. On June 30, 2025, Appellant was sentenced to twelve months' probation with electronic monitoring for 180 days. Codefendant Frank was sentenced to sixteen months' probation with electronic monitoring for eight months. No post-sentence motions were filed. Appellant files a notice of appeal on July 30, 2025. This appeal followed.[1]

Appellant raises one, two-part issue for our review:

> Whether the Commonwealth violated the rules of **Brady v. Maryland** and the Pennsylvania Rules of Criminal Procedure regarding disclosure of exculpatory evidence when it failed to disclose the plea agreement and evidence, interview or information with the co-defendant for truthful testimony against the Appellant; and, (b) whether the court erred in denying the Appellant's motion for a mistrial when the defense learned of the plea agreement.

Appellant's Br. at 8.

We begin with our standard of review. The denial of a motion for a mistrial is assessed on appellate review according to an abuse of discretion

---

[1] We note with displeasure the Commonwealth's failure to file an appellee's brief. "An appellee is required to file a brief that at minimum must contain a summary of argument and the complete argument for appellee." **Commonwealth v. Pappas**, 845 A.2d 829, 835 (Pa. Super. 2004) (internal quotation marks and citation omitted). In **Pappas**, the panel referred to the Commonwealth's failure to file a proper appellee's brief as "unacceptable." **Id**. We echo that opinion and remind the Commonwealth of its obligation to file an advocate's brief in future appeals.

standard. ***See Commonwealth v. Savage***, 116, 602 A.2d 309, 312 (Pa. 1992). The central task confronting a trial court upon the making of a motion for a mistrial is to determine whether misconduct or prejudicial error actually occurred, and if so, to assess the degree of any resulting prejudice. ***Commonwealth v. Sanchez***, 907 A.2d 477, 491 (Pa. 2006).

In order to establish a violation pursuant to ***Brady v. Maryland***, 373 U.S. 83 (1963), our Supreme Court has stated that

> a defendant has the burden to prove that: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the prosecution has suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material, meaning that prejudice must have ensued.

***Commonwealth v. Bagnall***, 235 A.3d 1075, 1086 (Pa. 2020) (citations omitted). We recognize that,

> [w]here evidence material to the guilt or punishment of the accused is withheld, irrespective of the good or bad faith of the prosecutor, a violation of due process has occurred. ***See Brady***, 373 U.S. at 87. . . . The ***Brady*** rule has been extended to require the prosecution to disclose exculpatory information material to the guilt or punishment of an accused even in the absence of a specific request. ***See United States v. Agurs***, 427 U.S. 97, 107, 96 S. Ct. 2392, 49 L. Ed. 2d 342 . . . (1976). . . . Exculpatory evidence also includes evidence of an impeachment nature that is material to the case against the accused. ***See Napue v. Illinois***, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 . . . (1959). Any implication, promise or understanding that the government would extend leniency in exchange for a witness's testimony is relevant to the witness's credibility. ***See Giglio v. United States***, 405 U.S. 150, 154, 92 S. Ct. 763, 31 L. Ed. 2d 104 . . . (1972). When the failure of the prosecution to produce material evidence raises a reasonable probability that the result of the trial would have been different if the evidence had been produced, due process has been violated and a new trial is warranted. ***See United States v.***

> *Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 . . .
> (1985). Impeachment evidence is material, and thus subject to
> obligatory disclosure, if there is a reasonable probability that had
> it been disclosed the outcome of the proceedings would have been
> different. *See Bagley*, 473 U.S. at 678. . . .

*Commonwealth v. Burkhardt*, 833 A.2d 233, 241 (Pa. Super. 2003) (some internal citations omitted).

Here, Appellant argues that it was not until the second day of her trial that she learned that codefendant Frank negotiated a plea with the Commonwealth for truthful testimony against Appellant. Appellant's Br. at 10. Frank's formal plea was entered a month prior to Appellant's trial. *Id*. At the time of the request for a mistrial, Appellant's counsel argued that the defense strategy may have been different had this been disclosed. *Id.* at 11. Appellant submits that she would have challenged the "reliability, competency and good faith of the overall investigation of the Appellant's original charges had the *Brady* information on co-defendant Frank been disclosed." *Id*. Finally, Appellant argues that she could have used the plea agreement information for impeachment evidence: "The information withheld on the co-defendant could have been used to undermine the prosecution witness's credibility, inconsistent statements and dishonesty." *Id.* at 12.

The trial court provided the following reason for denying Appellant's request for a mistrial:

> Under *Brady*, the prosecution is required to disclose
> favorable evidence that is material to guilt or punishment to the
> defense. A favorable plea bargain may constitute *Brady* material
> as it could impact the codefendant's credibility as a witness.

However, not all undisclosed plea agreements automatically constitute a ***Brady*** violation. The failure to inform defense counsel of a plea bargain with a codefendant constitutes error only if the plea bargain is material to the defense and creates a reasonable probability that the trial's outcome would have been different had the evidence been disclosed.

After the Commonwealth rested its case, defense counsel requested a mistrial asserting that the Commonwealth had failed to notify the defense of the favorable plea offer made to the codefendant for her testimony against the Appellant. The Court denied counsel's request for a mistrial as the Commonwealth had not called the codefendant as a witness at the trial. There was no assertion that the plea offer made to the codefendant impacted any other aspects of the Appellant's trial. The codefendant's sentence of probation was two[2] months longer than that imposed on the Appellant. The failure to disclose the plea offer was not material to the defense and could not have impacted the outcome of the trial in this case. The [t]rial [c]ourt's decision to deny the request for a mistrial was appropriate under the circumstances.

Tr. Ct. Op. at 4-5.

We agree. Initially, we find the fact that codefendant Frank was not called to testify to be dispositive. Appellant can make no plausible argument that the evidence of a plea agreement would have been favorable to her because there was no possible use of this evidence for impeachment; we are unpersuaded by Appellant's argument that she could have used this evidence to undermine the credibility of the Commonwealth's witness because the Commonwealth did not call codefendant Frank as a witness. Additionally, Appellant can set forth no plausible argument that prejudice ensued; she

---

[2] According to the respective docket of each defendants, Frank's term of probation is four months longer than that of Appellant's.

baldly states that her defense strategy "may" have been different. However, we agree with the trial court that under these circumstances, earlier disclosure of the plea agreement could not have impacted the outcome of the trial in this case. Any evidence of Frank's plea agreement could not have been "material" under **Brady**, **see Bagley, supra**, nor could it be "relevant to the witness's credibility" as Frank was not a witness at trial. **See Giglio, supra**. Therefore, no **Brady** violation occurred.

Finally, we address Appellant's argument that the trial court used an improper standard in denying the request for a mistrial. Appellant argues that it was improper for the court to state the following in response to counsel's request for a mistrial:

> Well, I'm not sure that **Brady** material is particularly relevant until there is a conviction. So, if you do your job between now and the conclusion of the case and get the jury to award a verdict of not guilty, it will never be a problem.

Appellant's Br. at 11 (citing N.T., 6/7/25, at 4).[3]

We agree that this is not an accurate or acceptable description of the **Brady** standard. Had a **Brady** violation actually occurred, we would have

---

[3] We note that Appellant failed to include the notes of testimony from the trial in the certified record. "[I]t is an appellant's duty to ensure that the certified record is complete for purposes of review." **Commonwealth v. Lopez**, 57 A.3d 74, 82 (Pa. Super. 2012) (citation omitted). An appellant's "[f]ailure to ensure that the record provides sufficient information to conduct a meaningful review constitutes waiver of the issue sought to be reviewed." **Id**. However, we do not find waiver in this appeal because we were able to conduct a meaningful review of the issue without the trial transcript.

found this reasoning for a trial court's denial of a motion for a mistrial to be an abuse of discretion. However, the trial court properly assessed that no prejudicial error occurred, **Sanchez, supra**, and thus this was a harmless error. **See Commonwealth v. Terry**, 521 A.2d 398, 409 (Pa. 1987) ("Under our harmless error test, an error is harmless if it does not prejudice the defendant, or the effect on the jury is minimal."); **Commonwealth v. Allshouse**, 36 A.3d 163, 182 (Pa. 2012) ("[H]armless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt."). Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/13/2026

- 8 -