437 A.2d 1162

**COMMONWEALTH of Pennsylvania,**

v.

**Eugene RICHARDSON, Appellant.**

**No. 367.**

Supreme Court of Pennsylvania.

Submitted Oct. 26, 1981.

Decided Dec. 17, 1981.

Dissenting Opinion Filed Dec. 18, 1981.

522

Ronald B. Merriweather, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Philadelphia, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN, and WILKINSON, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

On March 1, 1979, Eugene Richardson was convicted by a jury of first degree murder, burglary and robbery in the Court of Common Pleas of Philadelphia County. Following denial of post verdict motions, appellant was sentenced to two consecutive ten-to-twenty year terms for the robbery and burglary convictions, and a concurrent sentence of life imprisonment for the murder conviction. This appeal followed. We affirm.

On June 2, 1978, eight year old Aaron Richardson, appellant's cousin, was found strangled to death on the kitchen floor of his home. The body was found by Norman Richardson, the child's father, when Mr. Richardson returned home from work. Mr. Richardson called the police, who unsuccessfully attempted to revive the boy, but when the first police officer arrived, the body was already cold. The pockets of the victim's trousers were turned inside out and the money his parents had given him that morning, a little more than two dollars, was missing.

The evidence established that the murder took place between 8:00 a. m. and 8:10 a. m. on June 2, 1978. At 8:20 a.

m. that morning, appellant met one Brian Harvey, told Harvey that he had "knocked someone off" and took Harvey to the scene of the murder, where Harvey observed Aaron's body on the kitchen floor. Appellant then proceeded to school, where he persuaded a teacher to say that appellant was in school during the time of the murder.

Police investigation established that the basement door was forced open, a stereo turntable was moved from its usual position and placed near a door, the bedrooms were ransacked, and the children's banks were broken. A piece of weather stripping, which the medical examiner indicated may have been used to cause death, was also found. Additionally, appellant's palm print was found on the cover of the stereo. Although appellant lived a few doors from his uncle's house, the scene of the killing, evidence at trial established that prior to June 2, 1978, he had not been in his uncle's house since October of 1977, and further, that the palm print was of recent origin.

The first of appellant's thirteen assertions of error is that the trial court erred in failing to declare a mistrial when a defense witness testified on cross examination that the appellant had committed an unrelated crime. The witness, Ray Richardson, the fourteen year old brother of appellant, testified that his brother was last in his uncle's house, the scene of the killing, "when he burglarized it." The answer refers to appellant's October, 1977 burglary of his uncle's house. The exchange at trial went as follows:

BY MR. KING [the prosecutor]:

Q. Mr. Richardson, before June 2nd, 1978, when was the last time you were inside of your Uncle Norman's house?

(Brief pause)

A. I'd say about . . .

THE COURT: What's the answer?

THE WITNESS: I'd say January.

BY MR. KING:

Q. When was the last time your brother, Eugene, was in your Uncle Norman's house before June the 2nd, 1978?

MR. MERRIWEATHER: Objection.

THE COURT: If you know. Overruled. Do you know when was the last time he was there?

THE WITNESS: *It was when he burglarized it.*

MR. MERRIWEATHER: Your Honor, may we see you at side bar, please.

(Emphasis added).

This remark was preceded by discussions between the prosecutor, the court, and defense counsel concerning the necessity of preventing the jury from learning about the earlier burglary. In order to prevent any reference to the burglary from being made, the prosecutor instructed his witnesses not to mention the burglary directly, but to refer to it by date, October, 1977, if it were appropriate to refer to the prior burglary. Further, the prosecutor, on several occasions, cautioned defense counsel to be careful in this area of cross examination, and defense counsel stated that he appreciated "the prosecutor's concern over this dangerous line of cross examination."

The date of the prior burglary was relevant because the prosecutor wanted to establish that the appellant had not been permitted in his uncle's house since October, 1977, and thus, his palm print on the stereo must have been placed during his commission of the robbery-murder. Evidence of the palm print would have been inconclusive without proof that appellant did not have access to his uncle's house within the weeks prior to the murder.

Appellant's fundamental claim is that the witness's remark was so prejudicial that no instruction to the jury could cure the prejudicial effect. In the present case, the court gave the following instruction to the jury following the witness's reference to the burglary:

THE COURT: Ladies and Gentlemen of the jury, you will disregard that last answer, it's obviously a confused thing in the mind of the witness, and it has nothing to do with the case, and you totally disregard it as if it had never been said, and you'll let it play no part at all in your

decision of the case; it's totally out of context with this case, it has nothing to do with it and you'll disregard it.

[1, 2] As this Court stated in *Saunders et al. v. Commonwealth*, 345 Pa. 423, 425, 29 A.2d 62, 63 (1942), whether the admission of improper evidence can be cured by an instruction to disregard it "involves a consideration of the circumstances under which the irrelevant evidence was given and its probable effect on the jury." Although *Saunders* is a civil case, the principle for which it stands, that whether the exposure of the jury to improper evidence can be cured by an instruction depends upon a consideration of all the circumstances, is equally applicable to criminal cases. We have held that the prosecution may not introduce evidence of the defendant's prior criminal conduct as substantive evidence of his guilt of the present charge, *Commonwealth v. Clark*, 453 Pa. 449, 309 A.2d 589 (1973), and we here emphasize our commitment to this principle, but the holding in *Clark* does not establish a *per se* rule that all statements relating to prior crimes, regardless of the circumstances, require a mistrial. *Commonwealth v. Williams*, 470 Pa. 172, 178, 368 A.2d 249, 252 (1977).

In a criminal case, the possible prejudicial effect of a witness's reference to prior criminal conduct of the defendant may, under certain circumstances, be removed by an immediate cautionary instruction to the jury. *Commonwealth v. Povish*, 479 Pa. 179, 387 A.2d 1282 (1978). In *Commonwealth v. Williams, supra*, 470 Pa. at 178, 368 A.2d at 252, this Court stated:

[W]e have never ascribed to the view that all improper references to prior criminal activities necessarily require the award of a new trial as the only effective remedy. Our decisions have indicated that there are situations where the taint, resulting from an improper reference to an unrelated criminal act, may be expunged without resort to the extreme remedy of aborting an otherwise fair trial. . . .

The nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considera-

tions relevant to the determination of whether a mistrial is required. *Id.* at n. 4.

■ In the present case the trial court gave a prompt and decisive instruction to the jury to disregard the testimony. Moreover, the Commonwealth did not deliberately introduce the remark. Rather, as indicated earlier, the Commonwealth took pains to prevent the introduction of precisely the type of remark that this witness, a defense witness, blurted out. Further, the Commonwealth did not exploit the reference to the burglary and no other evidence of a prior burglary was introduced. Under all circumstances, the trial court's instruction to the jury to disregard the remark was proper, and the prejudice that resulted, if any, was insufficient to require a mistrial.

Appellant's other allegations of error are that (1) prosecutorial misconduct deprived the defendant of a fair trial; (2) the lower court erred when it denied counsel's request for individual voir dire of two jurors as to their verdict; (3) rebuttal testimony was improperly admitted; (4) a courtroom outburst by the victim's mother required a mistrial; (5) the court improperly restricted the cross-examination of a prosecution witness; (6) it was error to permit the modification of the appellant's statement by substitution of a date in place of reference to a prior burglary; (7) it was error to exclude the statement of a defense witness; (8) a stereo turnable was erroneously admitted into evidence; (9) the lower court improperly permitted a demonstration by a defense witness; (10) a prejudicial courtroom atmosphere denied appellant a fair trial; (11) it was improper for the lower court to permit the prosecutor to ask leading questions of a Commonwealth witness; and (12) the verdict was against the weight of the evidence. After a complete review of the record and the briefs we find no basis to disturb the disposition of the court below.

Judgments of sentence affirmed.

ROBERTS, J., filed a dissenting opinion in which WILKINSON, J., joins.

NIX, J., filed a dissenting opinion.

528

ROBERTS, Justice, dissenting.

Justice Jackson has observed:

"The naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction."

*Krulewitch v. United States*, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949) (Jackson, J., dissenting). If ever there were a case where Justice Jackson's observation was dispositive, surely this is the case. Appellant was on trial in part for the crime of burglarizing the very residence involved in the previous burglary to which the witness had referred. Even the most carefully drawn cautionary instruction could not have cured this obvious prejudice. Although the witness's regrettable reference was in no respect induced by the prosecuting attorney, still the fact remains that the remark irremediably deprived appellant of a fair trial.

I dissent and would grant appellant a new trial.

WILKINSON, J., joins in this dissenting opinion.

NIX, Justice, dissenting.

I dissent.

The challenged testimony elicited from the defense witness was not only clearly prejudicial but was also of such a nature that it could not be cured by the court's subsequent instructions.

There is no question that the reference to the prior burglary was improperly placed before the jury. As the majority concedes, the situation presented here does not fall within any of the recognized exceptions where evidence of a defendant's prior criminal conduct may be introduced as substantive evidence of guilt of a crime for which he is being tried. *Commonwealth v. Adams*, 476 Pa. 91, 381 A.2d 882 (1977); *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975); *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1973).

Moreover, the prejudicial aspect of this testimony was exacerbated because it was elicited from a defense witness obviously favorable to appellant. The witness bore a relationship of brother to the defendant. Additionally, the prior offense related to a burglary of the same premises in which the burglary, robbery and murder for which appellant was then on trial was alleged to have occurred. Under these circumstances, it is clear that the prejudicial impact could not be removed by an instruction from the court to ignore the testimony. *Commonwealth v. Williams*, 470 Pa. 172, 368 A.2d 249 (1977); *Commonwealth v. Fortune*, 464 Pa. 367, 346 A.2d 783 (1975); *Commonwealth v. Durant*, 268 Pa.Super. 191, 407 A.2d 1311 (1979).