J-S15032-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| GRANT DAVID LEWIS | : | |
| | : | |
| Appellant | : | No. 1530 WDA 2019 |

Appeal from the Judgment of Sentence Entered September 12, 2019
In the Court of Common Pleas of McKean County Criminal Division at
No(s):  CP-42-CR-0000044-2018

BEFORE:   BENDER, P.J.E., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED APRIL 20, 2020**

Appellant Grant David Lewis appeals from the judgment of sentence entered by the Court of Common Pleas of McKean County after a jury convicted Appellant of Aggravated Assault, Strangulation, and two counts each of Simple Assault and Harassment.  Appellant asserts that the trial court erred in denying his motion for a mistrial and imposing an illegal mandatory minimum sentence.  After careful review, we affirm.

Appellant was charged with the aforementioned offenses in connection with his January 4, 2018 attacks on his girlfriend, Charlotte Shugars ("the victim").  On that date, Appellant became enraged after discovering the victim stayed overnight at the residence of another male in Bradford,

_____

[*] Former Justice specially assigned to the Superior Court.

Pennsylvania. When Appellant located the victim at the male's apartment, he struck the victim several times in the face and demanded that she leave with him. The victim complied with Appellant's order as she did not want to be assaulted again. Notes of Testimony (N.T.), 7/15/19, at 35-38.

Once Appellant and the victim returned to their residence at 189 High Street in Bradford, the victim attempted to call her friend, Traci Frenz, for help. Shortly thereafter, Appellant pushed the victim to the floor and began to choke her. Appellant then hit victim's face, spit in her eyes, and kicked her head and ribs with his steel-toe boots. N.T. at 38-42.

Appellant stopped his assault of the victim after Frenz arrived in response to the victim's call. Frenz testified she observed the victim whimpering on the floor of the residence and noticed that the victim's nose was bleeding and her face and eye were swollen. Frenz heard Appellant yell to the victim multiple times, "I'm going to fucking kill you." After Frenz took the victim out of the residence and placed the victim in her car, Frenz called the police. N.T. at 14-18.

After the Bradford City Police Department responded to the scene, officers observed the victim had swelling and bruises on her eye and nose, cuts on her lip, and blood coming from her mouth. Appellant told the officers that he and the victim only had a verbal argument and indicated "if it was physical[,] I would have marks on my hand." Officers observed Appellant had a laceration between his fingers and his khaki pants appeared to be stained with blood. N.T. at 128-131.

The victim was subsequently transported to the Bradford Regional Medical Center, where physicians determined that the victim sustained multiple injuries, including a "blowout" fracture in the right orbital floor of her skull that was likely caused by blunt force trauma. *Id*. at 71-74.

At Appellant's jury trial, the prosecution presented the testimony of multiple witnesses, including Nichole Steinhauer, a forensic nurse examiner who evaluated the victim's injuries on January 4, 2018. On direct examination, Ms. Steinhauer described her observations of Appellant's bruises. On cross-examination, defense counsel asked Ms. Steinhauer about the size and color of the victim's bruises and whether these distinctions were important. In response, Ms. Steinhauer injected her opinion that the coloration of the victim's bruises were "consistent with the mechanism of the injury of those bruises that [the victim had] described." N.T. at 106.

Appellant's counsel objected to this testimony and argued that Ms. Steinhauer had improperly given an expert opinion when she was never qualified as an expert. The trial court sustained Appellant's objection, but declined to grant a mistrial and instead gave a curative instruction in which the trial court asked the jury to disregard Ms. Steinhauer's statement.

At the conclusion of trial, the jury convicted Appellant of the aforementioned offenses. The Commonwealth gave notice of its intent to seek a ten-year mandatory minimum sentence pursuant to 42 Pa.C.S.A. § 9714 based on the fact that Appellant had previously been convicted of a crime of violence. While sentencing was originally scheduled for August 29,

2019, the defense objected to the imposition of the mandatory minimum as it asserted that the prosecution had failed to present adequate proof of Appellant's prior conviction of a crime of violence.

The trial court continued the sentencing hearing until September 12, 2019, at which the Commonwealth presented evidence that Appellant had two prior robbery convictions in which he threatened two victims with a firearm in 1992. At the conclusion of the hearing, the trial court imposed a mandatory ten to twenty year sentence on the Aggravated Assault conviction pursuant to Section 9714. The trial court also imposed a concurrent term of three to six years' incarceration on the Strangulation conviction and a concurrent term of three to twelve months' incarceration for the Simple Assault conviction. The trial court did not impose any further penalties on the remaining charges.

Appellant filed a timely appeal and complied with the trial court's direction to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). On appeal, Appellant raises the following issues for our review:

1. Whether the trial court erred in denying Appellant's motion for a mistrial following testimony from Nic[h]ole Steinhauer at the jury trial on July 15-16?

2. Whether the trial court erred in imposing a mandatory sentence of ten (10) to twenty (20) years of incarceration on September 12, 2019, pursuant to 42 Pa.C.S.A. § 9714?

Appellant's Brief, at 5.

In reviewing Appellant's claim that the trial court erred in refusing to grant a mistrial, we are guided by the following standard:

> A motion for a mistrial is within the discretion of the trial court. **Commonwealth v. Tejeda**, 834 A.2d 619, 623 (Pa.Super. 2003). A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. **Id**. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. **Id**. On appeal, our standard of review is whether the trial court abused that discretion.

**Commonwealth v. Wade**, ____A.3d____, 1669 WDA 2016 (Pa.Super. Jan. 13, 2020). Further, with respect to a request for a mistrial based on the admission of improper testimony, this Court has provided that:

> [a] trial court may remove taint caused by improper testimony through curative instructions. **Commonwealth v. Savage**, 529 Pa. 108, 602 A.2d 309, 312-13 (Pa. 1992); **Commonwealth v. Richardson**, 496 Pa. 521, 437 A.2d 1162 (Pa. 1981). Courts must consider all surrounding circumstances before finding that curative instructions were insufficient and the extreme remedy of a mistrial is required. **Richardson**, 496 Pa. at 526-527, 437 A.2d at 1165. The circumstances which the court must consider include whether the improper remark was intentionally elicited by the Commonwealth, whether the answer was responsive to the question posed, whether the Commonwealth exploited the reference, and whether the curative instruction was appropriate. **Id**.

**Commonwealth v. Manley**, 985 A.2d 256, 266–67 (Pa.Super. 2009) (citation denied).

As noted above, Appellant argues that a mistrial was warranted after Ms. Steinhauer, the forensic nurse examiner, offered improper expert opinion testimony when the Commonwealth had not qualified her as an

- 5 -

expert witness.  Defense counsel elicited the following testimony on cross-examination:

> [Defense counsel:]  Is it significant to you and maybe I just don't know the answer this for myself but does the coloration of the bruise matter?
>
> [Ms. Steinhauer:]  So, the coloration of bruises I mean scientifically there's no way to date a bruise right we are aware of that but as human beings we all know that bruises happen along a continuum.  Like when you strike your knee on something for instance you have a red mark right and it may hurt a little and then the next day or you know several hours later it may become purplish in coloration and then it will develop into a yellow or brown coloration.  I mean being a human being and having bruised something at some point – prominence in your life I'm certain you've all experienced that. So for me the relevance of the fact that the bruises are red or purple in coloration indicates to me that they are newer bruises as opposed to bruises that have been there for some time and are healing.  Can I date them on a timeline[?] [A]bsolutely not but *it is certainly relevant to me that the bruises that I witnessed were consistent with the mechanism of the injury of those bruises that my patient described to me.*  Does that make sense to you?

N.T. at 105-106 (emphasis added).  After defense counsel objected and asked for a sidebar conference, defense counsel requested a mistrial.

The trial court sustained defense counsel's objection and indicated that Ms. Steinhauer's comment, indicating that the victim's bruises were "consistent with the mechanism of the injury" that victim had described, was nonresponsive to the question posed by defense counsel. However, the trial court denied Appellant's request for a mistrial and gave the jury the following curative instruction:

...[A]t the very end there was a statement from this witness that was "Well, these injuries were consistent with what the patient was telling her" [or] something along that line. It was nonresponsive to the initial question. The witness was not asked for an opinion about consistency[. I]t's the jury's job to decide credibility issues. This is a fact witness who's been called to provide testimony about what she observed as far as injuries and photos. It's up to the jury to what evidence they accept and don't accept but that conclusionary statement at the end infringes upon the jury's duty to – and job to decide credibility issues. And also, it was nonresponsive to the question asked. Therefore, the jury is to completely disregard that statement, not consider it or give it any weight in their determination when addressing this case at the conclusion of the case.

N.T. at 109-10.

Our review of the record shows that the Commonwealth did not intentionally elicit Ms. Steinhauer's remark, but rather, Ms. Steinhauer gave this testimony in response to an inquiry by defense counsel on cross-examination. Upon defense counsel's objection, the trial court promptly and definitively cautioned the jury to disregard Ms. Steinhauer's statement. Our courts have emphasized that "[i]t is well settled that juries are presumed to follow the instructions of a trial court to disregard inadmissible evidence." **Manley**, 985 A.2d at 268. As such, we conclude that the trial court did not abuse its discretion in denying Appellant's request for a mistrial.

Second, Appellant claims that the trial court imposed an illegal mandatory minimum sentence.

Generally, a challenge to the application of a mandatory minimum sentence is a non-waiveable challenge to the legality of the sentence. Issues relating to the legality of a sentence are questions of law, as are claims raising a court's interpretation of a statute. Our standard of review over such questions is *de novo* and our scope of review is plenary.

*Commonwealth v. Hawkins*, 45 A.3d 1123, 1130 (Pa.Super. 2012) (quoting *Commonwealth v. Brougher*, 978 A.2d 373, 377 (Pa.Super. 2009) (citation omitted)).

Specifically, Appellant claims that the trial court could not impose a mandatory minimum sentence pursuant to 42 Pa.C.S.A. § 9714 as the Commonwealth had not provided adequate proof that Appellant's 1992 robbery conviction qualified as a "crime of violence." Section 9714 provides in relevant part:

(a) **Mandatory sentence**.—

(1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Upon a second conviction for a crime of violence, the court shall give the person oral and written notice of the penalties under this section for a third conviction for a crime of violence. Failure to provide such notice shall not render the offender ineligible to be sentenced under paragraph (2).

● ● ●

(d) **Proof at sentencing.**--Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The sentencing court, prior to imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender, copies of which shall be furnished to the offender. If the offender or the attorney for the Commonwealth contests the accuracy of the record, the court shall schedule a hearing and direct the offender and the attorney for the Commonwealth to submit evidence regarding the

previous convictions of the offender. The court shall then determine, by a preponderance of the evidence, the previous convictions of the offender and, if this section is applicable, shall impose sentence in accordance with this section. …

42 Pa.C.S.A. § 9714(a)(1), (d).[1]

Section 9714 specifies that the term "crime of violence" includes "robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i),(ii),(iii) (relating to robbery)" or "an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense." 42 Pa.C.S.A. § 9714(g). Sections 3701 of the Crimes Code defines robbery as follows:

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another;

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

(iii) commits or threatens immediately to commit any felony of the first or second degree…

---

[1] Although not discussed by Appellant, we note that in *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151 (2013)*,* the Supreme Court of the United States established that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Id*. at 103, 133 S.Ct. at 2155. However, the Supreme Court in *Alleyne* did not overturn prior federal precedent that created an exception to this rule for the fact of a prior conviction. *Alleyne,* 133 S.Ct. at 2160 n. 1; *see also Almendarez–Torres v. United States,* 523 U.S. 224, 243–44, 118 S.Ct. 1219, 1230–31, 140 L.Ed.2d 350 (1998). Prior to the *Alleyne* decision, the Pennsylvania Supreme Court explained in a different context, "[w]here ... the judicial finding is a fact of a prior conviction, submission to a jury is unnecessary, since the prior conviction is an objective fact that was initially cloaked in all the constitutional safeguards and is now a matter of public record." *Commonwealth v. Aponte,* 579 Pa. 246, 264, 855 A.2d 800, 811 (2004).

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;

(v) physically takes or removes property from the person of another by force however slight; or

(vi) takes or removes the money of a financial institution without the permission of the financial institution by making a demand of an employee of the financial institution orally or in writing with the intent to deprive the financial institution thereof.

18 Pa.C.S.A. § 3701. Robbery convictions under Sections 3701(a)(1)(i)-(iii) are graded as felonies of the first degree. 18 Pa.C.S.A. § 3701(b)(1). Otherwise, a robbery conviction will be graded as a felony of the second or third degree, unless the object of the robbery is a controlled substance or designer drug. 18 Pa.C.S.A. § 3701(b)(1)-(2).

While Appellant concedes that he was convicted of robbery in 1992 in Philadelphia County, he argues that the record does not contain sufficient evidence that Appellant's prior conviction constituted a "crime of violence" as the particular subsection of the robbery conviction was never specified.

However, Appellant fails to acknowledge that the record contains the criminal history file from the Pennsylvania State Police Central Repository,[2] which states that that Appellant was convicted of two counts of Robbery (which the document specifically notes were "F1" convictions), conspiracy,

_____

[2] Section 9102 of the Criminal History Record Information Act (CHRIA) defines "central repository" as "[t]he central location for the collection, compilation, maintenance and dissemination of criminal history record information by the Pennsylvania State Police." 18 Pa.C.S.A § 9102.

and carrying a firearm without a license for offenses that occurred on June 11, 1992.[3] This document also states that Appellant was sentenced to five to ten years' imprisonment for one of the robbery convictions.

The record also contains the corresponding criminal complaints for Appellant's robbery of two separate victims; each complaint alleged that on June 11, 1992, Appellant had "approached the victim …, pointed a firearm at his head, threatened to kill him, and demanded money." Complaint, 6/12/92, at 1. Moreover, at sentencing, Appellant admitted that he had used a firearm in the 1992 robbery to retaliate against individuals for a prior crime. Appellant expressly stated:

> My decision to purchase a pistol was made because I wanted to be able to protect my family and myself in the urban environment we lived in. That would turn out to be one of the first of a series of stupid decisions I've made throughout my life. The second was answering the phone at 2:00 in the morning to hear my friend, Eugene, tell me that his cousin and his cousin's girlfriend had been robbed.

---

[3] We note that a conviction of conspiracy to commit robbery under Sections 3701(a)(1)(i)-(iii) of Crimes Code also constitutes a "crime of violence" under Section 9714. However, Appellant's prior robbery and conspiracy convictions would not require Appellant to receive a mandatory minimum sentence as a third-strike offender. In **Commonwealth v. Shiffler**, 583 Pa. 478, 879 A.2d 185 (2005), our Supreme Court concluded that the three strikes law under 42 Pa.C.S.A. 9714(a)(2), "reflects a 'recidivist philosophy' and should be construed to allow for heightened punishment for repeat offenders only where their convictions for crimes of violence, and corresponding terms of incarceration, are sequential and each is separated by an intervening opportunity to reform." **Id**. at 480, 879 A.2d at 186.

> With my skewed sense of loyalty and justice, my reaction was not to call the police but to get up and quick --- and pick up Gene and his cousin up to look for the perpetrators of this deed and deliver some retribution. That act resulted in my first contact ever with the justice system, charged with, ironically, Robbery. Despite the fact that I was a wartime veteran and had no prior record at all, because of the presence of the firearm, the subsequent conviction resulted in my being given a mandatory sentence of five to ten years.

N.T. Sentencing, 9/12/19, at 10.

Based on our review of the record, we agree that the Commonwealth presented sufficient proof that Appellant's 1992 robbery conviction was graded as first-degree felony and constituted a "crime of violence" under 42 Pa.C.S.A. § 9714. While Appellant argues that the specific subsection of the robbery statute was not identified in the record, Appellant never disputed that the factual basis underlying his conviction constitutes first-degree felony robbery under 18 Pa.C.S.A. § 3701(a)(1)(ii) ("in the course of committing a theft, [the individual] … threatens another with or intentionally puts him in fear of immediate serious bodily injury"). Appellant does not dispute that, in committing the 1992 robbery, he pointed a firearm at his victims, threatened to kill them, and demanded money.

As such, we conclude that the trial court did not err in determining that Appellant's prior robbery conviction constituted a "crime of violence" and warranted a mandatory minimum sentence under 42 Pa.C.S.A. § 9714(a)(1).

For the foregoing reasons, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/20/2020