J-S22013-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LAWRENCE VICTOR LARSEN | : | |
| | : | |
| Appellant | : | No. 1267 WDA 2022 |

Appeal from the Judgment of Sentence Entered July 19, 2022
In the Court of Common Pleas of Clarion County Criminal Division at
No(s): CP-16-CR-0000188-2020

BEFORE: OLSON, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY OLSON, J.:                    **FILED: October 11, 2023**

Appellant, Lawrence Victor Larsen, appeals from the judgment of sentence entered on July 19, 2022, following his jury trial conviction for terroristic threats.[1]  We affirm.

We briefly summarize the facts and procedural history of this case as follows.  On March 13, 2020, police were called to the Infusion Bar in Clarion County about a disturbance involving Appellant.  During a two-day jury trial commencing on June 9, 2022, investigating police officers, the bartender/assistant manager, as well as the security guard for Infusion Bar testified.  The bartender testified that when a woman fell off a barstool, he approached a group of people nearby and asked if everything was okay.  Appellant asked the bartender if he had a problem, then stated that he was a

---

[1] 18 Pa.C.S.A. § 2706(a)(1).

member of the Aryan Brotherhood and threatened to "knife [the bartender] in the neck." The bartender asked Appellant to leave and summoned bar security to speak with Appellant. Appellant again told the security guard that he was a member of the Aryan Brotherhood and that he was "going to burn the bar down" and "gut him like a fish." Appellant picked up a pool cue stick, but the security guard warned him not to use it, called the police, and escorted Appellant outside. Other patrons called the police as well. The police arrived within five minutes and arrested Appellant. The security guard testified that he had banished many people from Infusion Bar for drunken conduct, but that Appellant's threatening behavior was different, and the guard, as well as several patrons, were concerned that others inside the establishment might be harmed. The jury ultimately found Appellant guilty of the aforementioned crime.[2] On July 19, 2022, the trial court sentenced Appellant to 14 to 60 months of incarceration for terroristic threats with a consecutive term of 90 days of incarceration for public drunkenness.

On July 29, 2022, Appellant filed a timely post-sentence motion requesting, *inter alia*, that the trial court modify his sentence for public drunkenness because it unlawfully omitted a minimum term of incarceration. In its response to Appellant's post-sentence motion filed on September 2, 2022, the Commonwealth conceded that the trial court failed to impose both

---

[2] In a separate bench trial, the trial court also found Appellant guilty of the summary offense of public drunkenness, 18 Pa.C.S.A. § 5505. He does not challenge that determination.

a minimum and maximum sentence for public drunkenness pursuant to 42 Pa.C.S.A. § 9756(b)(1) ("The court shall impose a minimum sentence of confinement which shall not exceed one-half of the maximum sentence imposed"). On September 14, 2022, the trial court held a hearing on Appellant's post-sentence motion. Counsel for the parties was present but Appellant was not present at the proceeding. On September 29, 2022, the trial court entered an order and opinion modifying Appellant's sentence to include a minimum sentence of 45 days for public drunkenness but denied Appellant's remaining post-sentence contentions.[3]

_____

[3] Generally, a "defendant shall be present at every stage of the trial [including] imposition of sentence." **See** Pa.R.Crim.P. 602. Mindful of Rule 602, however, we note that the trial court was permitted to amend its sentencing order without conducting a new sentencing hearing because the original sentencing order had an obvious, patent mistake which rendered that sentence illegal. As we previously determined:

> Generally, a court "may modify or rescind any order within 30 days after its entry, if no appeal has been taken." **Commonwealth v. Klein**, 781 A.2d 1133, 1135 (Pa. 2001) (*citing* 42 Pa.C.S.A. § 5505). However, the court has "inherent powers to amend its records, to correct mistakes of the clerk or other officer[s] of the court, inadvertencies of counsel, or supply defects or omissions in the record, even after the lapse of the [thirty day] term." **Id.** (citations omitted). Included among these exceptional circumstances to Section 5505's jurisdictional time limits [are instances] where the court *sua sponte* corrects an illegal sentence originally imposed, even after the defendant has begun serving the original sentence. **Commonwealth v. Santone**, 757 A.2d 963 (Pa. Super. 2000); **Commonwealth v. Quinlan**, 639 A.2d 1235, 1239 (Pa. Super. 1994) (recognizing respective challenges of an illegal, patently contradictory, or fraudulently procured sentence as excepted from the jurisdictional

*(Footnote Continued Next Page)*

This timely appeal resulted.[4]  On appeal, Appellant presents the following issue for our review:

_____

time limit imposed by Section 5505). ***See also In the Interest of K.R.B.***, 851 A.2d 914 (Pa. Super. 2004) (finding an amended order subject to Section 5505's time limits because it added a penalty that was discretionary, rather than mandatory, under statute).

If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. ***Commonwealth v. Randal***, 837 A.2d 1211 (Pa. Super. 2003).

***Commonwealth v. Baio***, 898 A.2d 1095, 1099 (Pa. Super. 2006).  "[A] claim that a flat sentence should have instead had minimum and maximum terms goes to the legality of the sentence, and such issues are non-waivable." ***Commonwealth v. Postie***, 110 A.3d 1034, 1043 (Pa. Super. 2015) (citation omitted).  Finally, we note that this Court has also determined that "[i]n cases where the sentencing court clearly intended to impose the maximum sentence, we may amend the sentence by including a minimum term equal to one-half the maximum."  ***Commonwealth v. Cain***, 637 A.2d 656, 659 (Pa. Super. 1994).  For all of the foregoing reasons, we conclude that it was proper for the trial court to amend its sentencing order outside the Appellant's presence.

[4]  Appellant filed a counseled, timely notice of appeal on October 25, 2022. While Appellant purports to appeal from the subsequently amended sentencing order, Appellant's appeal actually lies from the original judgment of sentence entered on September 29, 2022.  ***See Commonwealth v. Wentzel***, 248 A.3d 540 (Pa. Super. 2021) (appeal is from the original sentencing order "as amended" by subsequent orders); ***see also Commonwealth v. Santiago***, 2020 WL 2537229 (Pa. Super. 2020) (appeal is from judgment of sentence rather than order granting in part and denying in part Santiago's post-sentence motion).  Hence, we have changed the caption accordingly.  ***See Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (correcting caption to reflect that the appeal properly lies from judgment of sentence).  On October 27, 2022, the trial court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) and Appellant complied timely.  The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on November 30, 2022, relying largely upon its earlier opinion denying Appellant's post-sentence motion entered on September 29, 2022.

1. Whether the trial court abused its discretion in denying [Appellant's] motion for mistrial when a Commonwealth witness testified in front of the jury about [Appellant's] association with police and probation in contravention of a [pre-trial motion *in limine* granted by the trial court]?

Appellant's Brief at 5 (unnecessary capitalization omitted).

On this issue, Appellant avers, in sum:

[A]ppellant filed a pre-trial motion *in limine* seeking to, "to preclude any evidence or testimony that shows or tends to show that [Appellant] was on state parole, or any other evidence that would indicate that he had recently been incarcerated as the result of prior cases." This [m]otion was agreed to by the Commonwealth, and [the trial court] issued a pre-trial [o]rder precluding any such testimony at [] trial. On direct examination, one of the main Commonwealth witnesses testified as follows: "[Appellant] came in, introduced himself, asked me if I was the bouncer. I explained to him that I was. We were talking a little bit. He asked me if the police or probation comes in here a lot, and I said no, not really." [Defense c]ounsel immediately objected and after a conversation at sidebar moved for a mistrial. The [trial c]ourt denied [defense] counsel's motion, and instead ordered that the jury disregard the prejudicial remarks, and allowed the witness to testify.

*Id.* at 9 (record citations omitted). Appellant contends this Court's decision in ***Commonwealth v. Padilla***, 923 A.2d 1189 (Pa. Super. 2007) controls. *Id.* at 10-11. Appellant maintains that in ***Padilla***, a Commonwealth witness testified that "[a]pparently [Padilla] had just got out of jail" and this Court "held that the witness' statement imputed clear prejudice due to [the] implication of Padilla's recent incarceration, and that the [trial court's] instruction to the jury was insufficient to undo the prejudice." ***Id.*** at 10. Accordingly, Appellant argues that he is entitled to a new trial. ***Id.*** at 12.

- 5 -

Our standard of review for the denial of a motion for mistrial is as follows:

> The denial of a motion for a mistrial is assessed on appellate review according to an abuse of discretion standard. The central tasks confronting the trial court upon the making of the motion were to determine whether misconduct or prejudicial error actually occurred, and if so, to assess the degree of any resulting prejudice.
>
> Additionally, when dealing with a motion for mistrial due to a reference to past criminal behavior, the nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required.

*Commonwealth v. Kerrigan*, 920 A.2d 190, 199 (Pa. Super. 2007) (internal citations, quotations, and brackets omitted).

As we previously explained:

> The "controlling question" in cases raising this issue "is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity." *Commonwealth v. Allen*, 292 A.2d 373, 375 (Pa. 1972). If such an inference is created, then a mistrial must be granted. However, the Pennsylvania Supreme Court stated in *Commonwealth v. Nichols*, 400 A.2d 1281, 1282 (Pa. 1979) that "(not) all references which may indicate prior criminal activity warrant reversal." Mere "passing references" to prior criminal activity do not warrant reversal unless the record illustrates that prejudice resulted from the reference. *Ibid.* As [] stated in *Commonwealth v. Colon*, 399 A.2d 1068, 1071 (Pa. Super. 1979), there is "no *per se* rule requiring a new trial for every reference (to prior criminal conduct). The decision whether to declare a mistrial when faced with these situations is addressed to the sound discretion of the trial judge."

*Commonwealth v. Bowermaster*, 444 A.2d 115, 118 (Pa. Super. 1982).

"Prejudice results where the testimony conveys to the jury, either expressly

or by reasonable implication, the fact of another criminal offense." ***Padilla***, 923 A.2d at 1195.

Finally, our Supreme Court has "never ascribed to the view that all improper references to prior criminal activities necessarily require the award of a new trial as the only effective remedy." ***Commonwealth v. Richardson***, 437 A.2d 1162, 1165 (Pa. 1981) (citation omitted). Instead, our Supreme Court has stated that "there are situations where the taint, resulting from an improper reference to an unrelated criminal act, may be expunged without resort to the extreme remedy of aborting an otherwise fair trial." ***Id.*** (citation omitted). "In a criminal case, the possible prejudicial effect of a witness's reference to prior criminal conduct of the defendant may, under certain circumstances, be removed by an immediate cautionary instruction to the jury." ***Id.*** (citation omitted). "It is well-settled that the jury is presumed to follow the trial court's instructions[.]" ***Commonwealth v. Cash***, 137 A.3d 1262, 1280 (Pa. 2016) (citation omitted).

Here, the trial court denied Appellant's request for a mistrial because the aforementioned statement was "not so prejudicial as to require a new trial because it was a passing remark, and it was not intentionally elicited by the Commonwealth." Trial Court Opinion, 9/28/2022, at 7. The trial court further determined that "any prejudice that may have resulted from [the] utterance was ameliorated by the court's curative instruction to completely disregard the improper evidence." ***Id.*** Finally, the trial court noted that "there was overwhelming evidence of [Appellant's] guilt which rendered harmless any

potential prejudice from [the] passing remark." ***Id.*** at 7-8. Accordingly, the trial court determined that Appellant was not entitled to relief.

Upon review of the certified record and applicable law, we agree with the trial court's decision to deny Appellant's motion for mistrial. At trial, the Commonwealth asked the witness at issue to describe the incident at Infusion Bar as it unfolded. N.T., 6/9/2022, at 41-42. Thereafter, the Commonwealth asked the witness, "[H]ad you seen [Appellant] earlier in the bar?" ***Id.*** at 42. The witness replied, "I did. He came in, introduced himself, asked me if I was a bouncer. I explained to him that I was. We were talking a little bit. He asked if the police or probation comes in here a lot, and I said no, not really." ***Id.*** Here, the Commonwealth never questioned the witness about state parole or otherwise attempted to illicit a response that Appellant was recently incarcerated. The Commonwealth merely asked the witness if he had seen Appellant earlier. The witness spontaneously volunteered that Appellant asked if law enforcement regularly visited the establishment. Examining the nature of the reference, we recognize that the statement did not expressly implicate Appellant in prior criminal activity. Accordingly, we reject Appellant's reliance on ***Padilla*** because the witness in that case made "a direct reference to [Padilla's] recent incarceration." ***Padilla***, 923 A.2d at 1196. Finally, we note that the remark in this case did not communicate to the jury Appellant's involvement in another criminal offense by reasonable implication. The witness' passing reference suggested that Appellant was concerned with whether there was a police presence at the location, but did not reveal that

Appellant was on probation, parole, or otherwise had a criminal past. Accordingly, we conclude that the Commonwealth did not engage in misconduct. Moreover, following the defense's objection to the statement and a sidebar discussion, the trial court instructed the jury as follows:

> Members of the jury, I am instructing you to completely disregard the last statement that the witness gave. That's not part of the evidence in this case and not for your consideration so you are to disregard the last testimony by this witness. It's not part of the evidence and not for you to consider.

N.T., 6/9/2022, at 44-45. We presume that the jury followed the trial court's instructions. Based upon all of the foregoing, we discern no abuse of discretion in denying Appellant's motion for a mistrial based upon alleged prosecutorial misconduct. Accordingly, Appellant's sole appellate issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

10/11/2023