J-S10009-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | N THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TYRELL SHYHEIM CHRISTIAN | : | |
| | : | |
| Appellant | : | No. 622 MDA 2025 |
| | : | |

Appeal from the Judgment of Sentence Entered November 15, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002048-2023

BEFORE:  DUBOW, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY DUBOW, J.:                **FILED: APRIL 30, 2026**

Appellant, Tyrell Shyheim Christian, appeals from the November 15, 2024 judgment of sentence of life imprisonment entered in the York County Court of Common Pleas following his jury conviction of First-Degree Murder and Possession of a Firearm by a Prohibited Person.[1]  Appellant challenges the denial of his post-sentence motion, motion for a mistrial, and motion for a new trial based on newly-discovered evidence, and the weight and sufficiency of the evidence in support of his convictions.  After careful review, we affirm.

---

[1] 18 Pa.C.S. §§ 2502(a) and 6105(a)(1), respectively.

The relevant facts and procedural history are as follows. On September 27, 2022, a man, later identified as Appellant, shot and killed the victim, Ethan Mooney, on the stoop of 527 West Market Street in York City.[2]

The Commonwealth charged Appellant with the above crimes and Appellant proceeded to a jury trial. Numerous witnesses testified on behalf of the Commonwealth, including eyewitnesses Barbara Chance and Kevin Hughes,[3] who both identified Appellant as the shooter. Responding and investigating law enforcement officers, and experts in forensic pathology, cell phone data, ballistics, and DNA also testified.

In addition to eyewitness testimony from Ms. Chance and Mr. Hughes, the Commonwealth also introduced, *inter alia*, video surveillance footage and cell phone location data placing Appellant in the area of the murder at the relevant time. *See*, *e.g.*, N.T. Trial, 10/2/24, at 380.

Relevant to the instant appeal, Mr. Hughes testified that he encountered Appellant and the victim at a distance of about three feet and observed Appellant yelling at the victim and the victim pleading with Appellant. *Id.* at 326-27. He testified that Appellant then pulled a small black Glock firearm out of the pocket of his hooded sweatshirt and shot the victim five to seven

_____

[2] The Commonwealth introduced evidence at trial, and Appellant concedes, that Appellant was a drug dealer, and one of Appellant's girlfriends lived at this address, which is located inside his drug territory. The Commonwealth also introduced evidence that Appellant did not know the victim prior to killing him.

[3] These witnesses were well-acquainted with Appellant as they both purchased drugs from him and sold drugs on his behalf.

times while the victim lay curled up and begging for his life. *Id.* at 327-28. He stated that no one else was with Appellant when Appellant shot the victim. *Id.* at 329-30, 360-61.

During Appellant's cross-examination of Mr. Hughes, Appellant's counsel asked Mr. Hughes why Mr. Hughes had become emotional when he learned from the District Attorney that the shooting had not been videorecorded, and Mr. Hughes answered: "Because I heard this has happened before and he got away with it." *Id.* at 337. Appellant's counsel immediately moved to strike Mr. Hughes's statement as non-responsive, and the court ordered the statement stricken from the record. *Id.* At sidebar, the Commonwealth asserted that the statement was not non-responsive, and the court agreed. Appellant's counsel then stated, "But he literally just said my guy killed somebody before. And I hate this, but I have to ask for a mistrial." *Id.* at 337-38.

Following a brief recess, the court held a conference in chambers during which the court acknowledged that its "biggest concern is obviously the statement is very prejudicial towards [Appellant]." *Id.* at 342; *see also id.* at 354. Appellant's counsel argued that a curative instruction would be inadequate to cure the prejudice to Appellant and that only a mistrial was appropriate. *Id.* at 345. The court, observing that Mr. Hughes's statement was an "[u]nanticipated but responsive" answer to a defense question, determined that a curative instruction would be sufficient and denied the motion for a mistrial. *Id.* at 350, 358. The court then instructed the jury as

follows: "I'm instructing you to disregard the witness's last statement. It was irrelevant, speculative hearsay and has nothing to do with this case, and you must totally disregard it as if it had never been said and you'll let it play no part in your decision in this case." *Id.* at 359.

Appellant testified on his own behalf, claiming that he saw Devonte Johnson, another drug dealer, kill the victim, and that he told Ms. Chance that, if anyone asked, she should say Appellant had done it.[4] N.T. Trial, 10/3/24, at 542-43, 548, 563. Appellant testified that Mr. Johnson asked Appellant to "hold it down."[5] *Id.* at 542. He testified that he agreed to "hold it down" because he had "just watched him kill somebody" and "didn't want to tell the man no . . . there's street cred about not snitching or not giving your homey up or, you know, things like that." *Id.* at 548. He further testified that in return Mr. Johnson offered Appellant a kilo of cocaine and to protect Appellant and Appellant's family. *Id.* at 557-59, 580. He testified that, ultimately, he decided to identify Mr. Johnson as the shooter because Appellant did not commit the crime and he did not "want to take the rap for it." *Id.* at 559.

Following its deliberations, on October 3, 2024, the jury, rejecting Appellant's testimony, convicted him of First-Degree Murder and Possession of a Firearm by a Prohibited Person. On November 15, 2024, the trial court

---

[4] No witnesses or surveillance evidence put Mr. Johnson at the scene of the murder.

[5] Appellant testified that he took "hold it down" to mean that Mr. Johnson wanted Appellant to "take the rap" for the murder or "at least do not speak about it." N.T. Trial, 10/3/24, at 542-43.

sentenced Appellant to a term of life imprisonment for the First-Degree Murder conviction and a consecutive term of 5-10 years for the firearms conviction.

That same day, counsel filed a post-sentence motion for a new trial claiming that the trial court erred in not granting a mistrial and seeking leave to withdraw as counsel. The sentencing order docketed by the court clerk on November 15, 2024, indicated that a "[p]ost-[s]entence [m]otion is scheduled for February 6, 2025[.]" Order, 11/15/24. Pursuant to our Rules of Criminal Procedure, the trial court had 120 days, *i.e.*, until March 17, 2025, to decide the motion or it would be deemed denied by operation of law. Pa.R.Crim.P. 720(B)(3)(a).

On December 4, 2024, the trial court granted counsel's motion to withdraw and appointed current counsel, Kanika D. Henderson, Esquire, to represent Appellant. Although Appellant did not seek an extension of time for the court to decide his post-sentence motion outside the 120-day period as provided by Rule 720(b)(3)(b), the court nonetheless also entered a "rescheduling notice" rescheduling the hearing on Appellant's post-sentence motion to April 3, 2025.

On the morning of the April 3, 2025 hearing, Attorney Henderson filed on Appellant's behalf, but without leave of court, an amended post-sentence motion seeking a new trial reiterating Appellant's earlier claim that the court erred in denying his motion for a mistrial and challenging the sufficiency and weight of the evidence. In addition, he also sought a new trial based on counsel's discovery of new and allegedly exculpatory evidence from an

- 5 -

unidentified witness who claimed that Appellant was not the shooter. Following the hearing, the trial court entered an order taking Appellant's post-sentence motion under advisement and deferring its decision.

On April 7, 2025, the trial court entered an order directing the lower court clerk to enter an order denying Appellant's post-sentence motion by operation of law. The court noted in the order that Appellant did not file a Rule 720(B)(3)(b) request for an extension of time for the court to rule on the post-sentence motion. On April 8, 2025, the lower court clerk entered an order deeming Appellant's post-sentence motion denied, thus commencing the running of the appeal period.

On May 5, 2025, Appellant filed a timely notice of appeal from his judgment of sentence. Both Appellant and the trial court complied with Pa.R.A.P. 1925(b).

Appellant raises the following four issues on appeal:

1. Whether the trial court abused its discretion and/or committed an error of law in denying [Appellant's] [p]ost-[s]entence motion pursuant to Pa.R.Crim.P. 720, wherein the hearing on the motion was held more than 120 days after sentencing due solely to a scheduling error, not attributable to [Appellant?]

2. Whether the trial court abused its discretion in denying [Appellant's] [m]otion for a [m]istrial after a Commonwealth witness testified "I heard this happened before and he got away with it," where such testimony was highly prejudicial and could not have been cured by a limiting or curative instruction[?]

3. Whether the trial court abused its discretion in denying [Appellant's] [m]otion for a [n]ew [t]rial based on newly discovered evidence[?]

- 6 -

4. Whether the evidence presented at trial was against the weight and sufficiency of the evidence to sustain a verdict for Murder of the First Degree[] and Possession of a Firearm by a Prohibited Person[?]

Appellant's Br. at 6.

In his first issue, Appellant challenges the trial court's denial of his post-sentence motion by operation of law where the trial court scheduled the hearing on the motion outside the 120-day period during which the court had jurisdiction to decide the motion. *Id.* at 26-27. Appellant contends the court should not have penalized him by denying his motion without considering its merits when it was the court, through no fault of Appellant's, who delayed the hearing until after the 120-day period. *Id.* at 27.

Our review of questions regarding the interpretation of the rules of criminal procedure require that we apply a *de novo* standard of review and a plenary scope of review. ***Commonwealth v. Lopez***, 280 A.3d 887, 894 (Pa. 2022).

Pennsylvania Rule of Criminal Procedure 720(B)(3) states that the trial court "**shall** decide [a] post-sentence motion, including any supplemental [post-sentence] motion, within 120 days of the filing of the motion" unless the defendant files a request with the court for a 30-day extension of time for the court to decide the motion. Pa.R.Crim.P. 720(B)(3)(a), (b) (emphasis added). The rule further provides that, if the trial court "fails to decide the motion within 120 days, or to grant an extension as provided in [Rule 720](B)(3)(b), the motion **shall** be deemed denied by operation of law." *Id.* at 720(B)(3)(a) (emphasis added). Once a post-sentence motion is denied by the trial court,

- 7 -

or deemed denied by operation of law, a defendant has 30 days in which to file a timely notice of appeal.  ***Id.*** at 720(A)(2)(a), (b).

Here, Appellant timely filed his post-sentence motion on November 15, 2024.  As noted above, the trial court had until March 17, 2024, to dispose of the post-sentence motion or the post-sentence motion would be deemed denied by operation of law.  ***See id.*** at 720(B)(3)(c).  Because the trial court did not dispose of Appellant's November 15, 2024 post-sentence motion by March 17, 2025, and Appellant did not request an extension of time for the court to resolve the post-sentence motion pursuant to Rule 720(B)(3)(b), Appellant's post-sentence motion was deemed denied by operation of law on March 17, 2025.

Appellant has not provided citation to any authority permitting the trial court to exercise its discretion to expand the 120-day jurisdictional deadline *sua sponte*.  Accordingly, Appellant's claim that the trial court should not have deemed his post-sentence motion denied by operation of law is without merit.

In his second issue, Appellant contends that the trial court erred in denying his motion for a mistrial.  Appellant's Br. at 28-30.  He claims that, given the trial court's acknowledgement of the prejudicial nature of the witness's testimony, only a mistrial could erase the prejudice.  ***Id.*** at 29-20.

We review a trial court's denial of a motion for a mistrial for an abuse of discretion.  ***Commonwealth v. Bryant***, 67 A.3d 716, 728 (Pa. 2013).  A mistrial is an extreme remedy that is appropriate "only where the incident upon which the motion is based is of such a nature that its unavoidable effect

- 8 -

is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Id.* (citations omitted). "It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial." ***Commonwealth v. Caldwell***, 117 A.3d 763, 774 (Pa. Super. 2015) (*en banc*) (citations omitted). When a trial court gives adequate cautionary instructions to the jury, it is not necessary for the court to declare a mistrial. ***Bryant***, 67 A.3d at 728. "The law presumes that the jury will follow the instructions of the court." ***Commonwealth v. Brown***, 786 A.2d 961, 971 (Pa. 2001).

Pa.R.Crim.P. 605 provides, in relevant part, as follows:

(B) When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity.

Pa.R.Crim.P. 605(B).

Our Supreme Court has "never ascribed to the view that all improper references to prior criminal activities necessarily require the award of a new trial as the only effective remedy." ***Commonwealth v. Richardson***, 437 A.2d 1162, 1165 (Pa. 1981) (citation omitted). Instead, our Supreme Court has stated that "there are situations where the taint, resulting from an improper reference to an unrelated criminal act, may be expunged without resort to the extreme remedy of aborting an otherwise fair trial[.]" ***Id.*** (citation omitted). "In a criminal case, the possible prejudicial effect of a witness's reference to prior criminal conduct of the defendant may, under

certain circumstances, be removed by an immediate cautionary instruction to the jury." *Id.* "It is well-settled that the jury is presumed to follow the trial court's instructions[.]" *Commonwealth v. Cash*, 137 A.3d 1262, 1280 (Pa. 2016).

In explaining its reasons for denying Appellant's motion for a mistrial, the trial court emphasized that it was Appellant's counsel, and not the Commonwealth, who elicited Mr. Hughes's statement alleging that Appellant had previously committed a murder and "gotten away with it." Trial Ct. Op., 8/5/25, at 24. The court emphasized that the Commonwealth did not exploit the reference or introduce any evidence of alleged prior crimes. *Id.* The court then explained that it promptly issued a curative instruction to the jury to mitigate any prejudice. *Id.* at 26.

Following our review of the record, we discern no abuse of discretion in the trial court's denial of Appellant's motion for a mistrial. Following Mr. Hughes's passing reference to his feelings—made in response to Appellant's counsel's own question—the trial court provided the jury with a robust and comprehensive instruction to, *inter alia*, "totally disregard it as if had never been said" and to "let it play no part in [its] decision in this case." N.T. Trial, 10/2/24, at 359. The court then asked the jury if they understood its instruction and noted that "[e]veryone is nodding yes." *Id.* We conclude that the trial court's immediate curative instruction was sufficient to cure any possible prejudicial effect of Mr. Hughes's statement and presume the jury

followed the court's instruction by disregarding Mr. Hughes's statement. Accordingly, this claim for relief fails.

In his third issue, Appellant claims that the trial court should have awarded him a new trial based on his post-trial discovery of exculpatory evidence. Appellant's Br. at 31-34.[6] He claims that he was unaware of the new witness's testimony until 4 days before the hearing on his post-sentence motion and he could not have discovered it earlier because the witness, who was "active in his addiction and moved from York County," had not identified himself to law enforcement or the defense. *Id.* at 32. He further claims, on the one hand, that the evidence is not cumulative of any presented at trial "as no other witnesses testified that [Appellant] was not the shooter[,]" and, on the other hand, that the evidence is corroborative of Appellant's testimony that Appellant did not shoot and kill the victim. *Id.* He contends that the evidence is not solely impeachment evidence because the witness "has first-

_____

[6] We note that, because of the breakdown in the operation of the court that occurred when the lower court clerk did not enter the order denying Appellant's post-sentence motion by operation of law until April 8, 2025, Appellant preserved this issue by raising it in his amended post-sentence motion, which he filed on April 3, 2025, prior to the commencement of the running of the appeal period. *See* Pa.R.Crim.P 720(C) (requiring that a "post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing **promptly** after such discovery.") (emphasis added). The official comment to Rule 720(C) explains, in pertinent part, that "after-discovered evidence discovered during the post-sentence stage must be raised promptly with the trial [court] at the post-sentence stage[.]" *Id.* at 720(C) cmt. Thus, where, as here, the evidence is discovered in the post-sentence but pre-appeal stage, a defendant may raise an after-discovered evidence claim via a post-sentence motion filed with the trial court pursuant to Rule 720(C).

hand knowledge as to the shooter and would testify that [Appellant] was not the person who killed [the victim]." *Id.* Finally, Appellant asserts that the new evidence would likely compel a different verdict because "a credible eyewitness who observed the shooting [could] testify that [Appellant] was not the shooter[,]" which would "alter the jury's view of the case." *Id.* at 33. He concludes that, "[g]iven the inconsistencies among the Commonwealth's witnesses, it is reasonably probable that the newly discovered evidence would have created reasonable doubt in the minds of the jurors." *Id.*

We review the trial court's decision denying a new trial based on after-discovered evidence for an abuse of discretion or an error of law that controlled the outcome of the case. *Commonwealth v. Griffin*, 137 A.3d 605, 608 (Pa. Super. 2016). "If a trial court erred in its application of the law, an appellate court will correct the error." *Id.* (citation omitted).

An appellant is entitled to a new trial based on after-discovered evidence if the appellant demonstrates by a preponderance of the evidence that the after-discovered evidence "(1) could not have been obtained prior to trial by exercising reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; **and** (4) would likely result in a different verdict." *Commonwealth v. Castro*, 93 A.3d 818, 821 n.7 (Pa. 2014) (emphasis added). "The proposed new evidence must be 'producible and admissible.'" *Griffin*, 137 A.3d at 608 (citation omitted). "Absent a plausible explanation for the failure to discover the evidence earlier, evidence obtained after trial should not be deemed 'after-discovered[.]'"

- 12 -

*Commonwealth v. Padillas*, 997 A.2d 356, 364 (Pa. Super. 2010) (citation omitted).

Critically, the failure to establish any one element is fatal to an appellant's claim. *Commonwealth v. Pagan*, 950 A.2d 270, 293 (Pa. 2008).

Instantly, the trial court explained in its Rule 1925(a) opinion that Appellant did not prove his entitlement to a new trial. In particular, the court explained that: (1) "Appellant [did] not even name the proposed witness or indicate how the witness came to Appellant's attention[;]" (2) the alleged new evidence was merely cumulative or corroborative of Appellant's testimony that he was not the shooter; and (3) in light of the overwhelming evidence of Appellant's guilt, this evidence would not likely have resulted in a different verdict. Trial Ct. Op. at 27-32.

Following our review of the record, we agree with the trial court that Appellant did not prove his entitlement to a new trial by proving each of the required elements. We find, critically, that the testimony proffered by the after-discovered witness that Appellant was not the shooter would be merely corroborative or cumulative of Appellant's own testimony that he was not the victim's killer—a fact Appellant concedes in his brief. Because a new trial is only appropriate where a defendant can satisfy each element of the after-discovered evidence test, and Appellant has been unable to do so, his claim that the trial court erred or abused its discretion in denying his motion fails to garner him relief.

In his final issue, Appellant purports to challenge both the weight and sufficiency of the Commonwealth's evidence.

Turning first to Appellant's weight of the evidence claim, we note that, unlike an after-discovered evidence claim, our Rules require a defendant to raise a weight of the evidence claim in a timely-filed post-sentence motion. Pa.R.Crim.P. 607(A)(3). Our review of the record indicates that Appellant did not raise this claim in his initial, timely-filed post-sentence motion. Rather, Appellant raised this claim for the first time in the amended post-sentence motion he filed on April 3, 2025—after the post-sentence motion was denied by operation of law and the trial court had lost jurisdiction to rule on it. In failing to raise this claim in the timely-filed post-sentence motion, Appellant waived it for appellate review.

With respect to his sufficiency of the evidence challenge, Appellant claims that the Commonwealth failed to present sufficient evidence to prove that he acted with the requisite intent to commit First-Degree Murder. Appellant's Br. at 34-37. In particular, Appellant contends that he "had no prior interaction, dispute[,] or relationship with [the victim], and no evidence was presented to show any animosity or intent to harm [the victim]." *Id.* at 36. Appellant argues that this, coupled with the presentation of "shifting theories of motive demonstrate the speculative nature of the Commonwealth's case" and show that "the Commonwealth could not establish why [Appellant] would commit this crime, further undermining the sufficiency of the evidence." *Id.*

- 14 -

Appellant's challenge to the sufficiency of the evidence presents a question of law. **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000). Accordingly, "our standard of review is *de novo*[,] and our scope of review is plenary." **Commonwealth v. Diamond**, 83 A.3d 119, 126 (Pa. 2013).

"When reviewing a challenge to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as verdict winner, giving it the benefit of all reasonable inferences to be drawn from the evidence." **Commonwealth v. Lake**, 281 A.3d 341, 345 (Pa. Super. 2022). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." **Widmer**, 744 A.2d at 751.

Appellant challenges his conviction for First-Degree Murder. "To convict a defendant of first-degree murder, the jury must find that (1) a human being was unlawfully killed; (2) the defendant is responsible for the killing; and (3) the defendant acted with a specific intent to kill." **Commonwealth v. Montalvo**, 956 A.2d 926, 932 (Pa. 2008) (citing 18 Pa.C.S. § 2502(a)). "Specific intent to kill as well as malice can be inferred from the use of a deadly weapon upon a vital part of the victim's body." **Commonwealth v. Padilla**, 80 A.3d 1238, 1244 (Pa. 2013).

Here, the Commonwealth presented evidence that Appellant shot the victim from a distance of no more than three feet, up to six times in the torso, inflicting injuries to, *inter alia*, the victim's "right axillary and vein," "both

lungs, the heart, and ribcage," and that multiple gunshot wounds were the cause of the victim's death. N.T. Trial, 10/1/24, at 162, 164, 166, 170-71. The case law is clear that from Appellant's use of a firearm—an undeniably deadly weapon—to the victim's torso, we can infer that Appellant had the specific intent to kill. Appellant's claim that the Commonwealth failed to demonstrate that he acted with the requisite intent to kill the victim, thus, fails.

In sum, having found each of Appellant's issues either waived or lacking merit, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/30/2026